|  |  |
|---|---|
| Securities and Exchange Commission,<br><br>    Plaintiff<br><br>v.<br><br>Hemp, Inc., et al.,<br><br>    Defendants | Case No.: 2:16-cv-01413-JAD-PAL<br><br>**Order Denying Motion for Partial Summary Judgment Against the Epling Defendants; and Denying Motion for Judgment on the Pleadings**<br><br>[ECF Nos. 66, 76] |

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

    The Securities and Exchange Commission (SEC) alleges that the defendants—a circle of friends, family, and legal business entities—engaged in a comprehensive, several-years-long scheme to defraud investors and evade securities laws by selling restricted shares of Hemp, Inc. stock without registering the sales.[1] One year after answering the SEC's complaint and one business day before the close of discovery, the Hemp Defendants[2] moved for judgment on the pleadings.[3] And the SEC moves for partial summary judgment against the Epling Defendants[4] on its third cause of action for violating Sections 5(a) and 5(c) of the Securities Act.[5] I find that the Hemp Defendants' motion does little more than seek to delay trial, and that genuine issues of fact preclude me from granting partial summary judgment, so I deny both motions.

---

[1] ECF No. 1.

[2] The Hemp Defendants are Hemp, Inc., Bruce Perlowin, Barry K. Epling (Bruce's long-time friend and business advisor), Ferris Holding Inc., and Hobbes Equities, Inc. The SEC settled with the other defendants: Bruce's brother Jed; Diversified Investments LLC, and Quantum Economic Protocols LLC. ECF Nos. 52, 53, 54.

[3] ECF No. 66.

[4] The Epling Defendants include Barry Epling, Bruce Perlowin's longtime friend and business advisor; Ferris Holdings, Inc., a Nevada corporation that is wholly controlled by Epling and owned in equal shares by his two daughters; and Hobbes Equities, Inc., a Nevada corporation that is wholly owned by Ferris and controlled by Epling. The corporations' liability is derivative of Epling's.

[5] ECF No. 76.

**Background**

Defendant Barry Epling went out to breakfast with two of his business partners in December 2012 when the conversation turned to his involvement with co-defendant Hemp, Inc.[6] Epling admitted that he and co-defendant Bruce Perlowing "run Hemp, Inc."[7] But, Epling explained, he avoided having an official title within Hemp for two reasons: "One is the association. The other one is, is that if you're an officer or director or if you're a controller in the company, you're what is called an affiliate. And if you're an affiliate, you can sell one—an amount of stock equal to 1% of the issued shares of that classic [sic][8] stock every 90 days."[9] Epling then told his breakfast companions that he had "been and [would] continue to unload a lot more than that on a regular basis[.]"[10] No Notices of Proposed Sale had ever been filed under Hemp on behalf of Epling, Ferris, or Hobbes.[11] Unbeknownst to Epling, that conversation was recorded on an iPhone. Epling later testified under oath that everything he told his business partners was incorrect, and that he was "just playing" with them because he was "totally done" with them.[12]

**Discussion**

**A.  Judgment on the pleadings**

A motion for judgment on the pleadings may be brought "after the pleadings are closed but within such time as not to delay the trial."[13] Wright & Miller explains that a district judge

---

[6] ECF Nos. 90 at 42; 76-6 at 8.

[7] ECF No. 76-12 at 3.

[8] I suspect that the transcriber misheard the audio recording and typed "classic" instead of "class of."

[9] ECF No. 76-12 at 4–5.

[10] *Id.* at 5.

[11] ECF No. 76-13 at 2.

[12] ECF No. 90 at 58.

[13] FED. R. CIV. P. 12(c).

may decline to consider a motion for judgment on the pleadings if the motion will cause excessive delay:

> Ordinarily, a motion for judgment on the pleadings should be made promptly after the close of the pleadings. Generally, however, a Rule 12(c) motion is considered timely if it is made early enough not to delay trial or cause prejudice to the non-movant. If a party engages in excessive delay before moving under Rule 12(c), the district court may refuse to hear the motion on the ground that its consideration will delay or interfere with the commencement of the trial. The determination whether the motion is a legitimate one or simply has been interposed to delay the trial is within the sound discretion of the judge.[14]

Motions for judgment on the pleadings are "functionally identical" to motions to dismiss for failure to state a claim brought under FRCP 12(b)(6).[15] "Judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."[16]

The pleadings closed when the Hemp Defendants answered the SEC's complaint on August 19, 2016.[17] Discovery was originally set to close on May 16, 2017,[18] but was extended to a final deadline of Monday, July 17, 2017.[19] The Hemp Defendants filed their motion for judgment on the pleadings on Friday, July 14, 2017[20]—almost an entire year after they answered the complaint and on the last business day before discovery closed. I find that this motion causes undue and unnecessary delay, so I exercise my discretion and decline to consider it. I note, however, that even if I did consider the parties' arguments on their merits, the outcome would be

---

[14] 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2017).

[15] *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

[16] *Rose v. Chase Bank, USA, N.A.*, 513 F.3d 1032, 1036 (9th Cir. 2008) (internal citation omitted).

[17] ECF Nos. 19–22.

[18] ECF No. 40.

[19] ECF No. 62.

[20] ECF No. 66.

the same because it appears that the SEC has pled claims that satisfy *Iqbal*,[21] *Twombly*,[22] and the heightened pleading standard for fraud claims under FRCP 9(b).

**B.      Partial-summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[23] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[24] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[25]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[26] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[27] Because the purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses,"[28] the court's ability to grant summary judgment on certain issues or elements—a partial grant of summary judgment—is inherent in Rule 56(a).

---

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[23] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[24] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[25] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[27] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[28] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

4

**B.     Relevant securities law and regulations**

"Sections 5(a) and (c) of the Securities Act make it unlawful to offer or sell a security in interstate commerce if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration."[29]  "To establish a prima facie case for [a] violation of Section 5, the SEC must show that (1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce."[30]  "Once the SEC introduces evidence that a defendant has violated the registration provisions, the defendant then has the burden of proof in showing entitlement to an exemption."[31]

The bread-and-butter exemption from registering a sale of securities is Section 4(a)(1) of the Securities Act.  That section exempts from the requirements of Section 5 "transactions by any person other than an issuer, underwriter, or dealer."[32]  An underwriter is "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates . . . in any such undertaking[.]"[33]  And, as used in this definition, an issuer includes "any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer."[34]

The SEC promulgated Rule 144 to create a safe harbor from the underwriter classification and give clarity to individuals seeking to resell securities.  "A person satisfying the applicable conditions of the Rule 144 safe harbor is deemed not to be engaged in a distribution of

---

[29] *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013) (discussing 15 U.S.C. § 77e(a) and (c)) (quoting *SEC v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1085 (9th Cir. 2010)).

[30] *Id.* (citing *SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007)); *see also SEC v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004).

[31] *Id.* (quoting *SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980) (quoting *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953))).

[32] 15 U.S.C. § 77d(a)(1).

[33] 15 U.S.C. § 77b(a)(11).

[34] *Id.*

5

the securities and therefore not an underwriter of the securities for the purposes of Section 2(a)(11)."[35] The conditions required to satisfy Rule 144 vary depending on three factors: (1) whether the issuer is a reporting or non-reporting company;[36] (2) whether the securities are restricted or unrestricted;[37] and (3) whether the individual seeking to resell them is an affiliate or non-affiliate.[38] Rule 144 limits the amount of securities that an affiliate can sell within a three-month period to 1% of the outstanding stock of the class being sold.[39] And any person seeking to sell securities in reliance on Rule 144 must file a Notice of Proposed Sale (Form 144) with the SEC if that person sells more than 5,000 shares or more than $50,000 worth of securities in a three-month period.[40]

"An affiliate of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer."[41] Control "means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[42] "Control is not to be determined by artificial tests, but is an issue to be determined from the particular circumstances of the case. Under Rule 405 . . . it is not necessary that one be an officer, director, manager, or even shareholder to be a controlling person. Further, control may exist although not continuously and actively exercised."[43]

---

[35] 17 C.F.R. § 230.144 (preliminary note).

[36] 17 C.F.R. § 230.144(c).

[37] 17 C.F.R. § 230.144(d).

[38] 17 C.F.R. § 230.144(b)(2), (e).

[39] 17 C.F.R. § 230.144(e).

[40] 17 C.F.R. § 230.144(h).

[41] 17 C.F.R. § 230.144(a)(1).

[42] 17 C.F.R. § 230.405.

[43] *Platforms Wireless*, 410 F.2d at 866.

If an affiliate sells more than 1% of the outstanding stock of that class in a three-month period, then it does not qualify for Rule 144's safe harbor. Or if someone sells more than $50,000 worth of securities or more than 5,000 shares of stock in a three-month period without filing a Form 144, then that person does not qualify for Rule 144's safe harbor. But "Rule 144 is not an exclusive safe harbor. A person who does not meet all of the applicable conditions of Rule 144 still may claim any other available exemption under the Act for the sale of the securities."[44] And when a defendant "has failed to qualify for the Rule 144 safe harbor, courts look to Section 2(a)(11) of the Act, which [defines an underwriter.]"[45] "Put another way, a seller will *not* be deemed an 'underwriter' if: '(1) the acquisition of the securities was not made with a view to distribution *and* (2) the sale any security was not made for an issuer in connection with a distribution.'"[46]

## C. Genuine issues of material fact exist.

The SEC's argument that the Epling Defendants violated Section 5 of the Securities Act goes like this: Epling admitted during that breakfast conversation that he—along with Bruce Perlowin—controlled Hemp. Epling's control over Hemp therefore deems him an affiliate who is bound by Rule 144's sale-volume limitation.[47] But Epling admitted that he was selling and would continue to sell securities in excess of the 1% limitation. And the uncontroverted evidence shows that no Forms 144 had ever been filed by Epling, Ferris, or Hobbes. So, "by failing to abide by the volume limitations and notice-filing requirements of Rule 144, the Epling Defendants, as a matter of law, fell outside the safe harbor of Rule 144 and therefore qualified as

---

[44] *Id.*

[45] *SEC v. Olins*, 2010 WL 900518, at *1 (N.D. Cal. Mar. 12, 2010) (citing *SEC v. Kern*, 425 F.3d 143, 151–52 (2d Cir. 2005)).

[46] *Id.* (quoting *SEC v. Hedden*, 796 F. Supp. 432, 437 (N.D. Cal. 1992) (citing *Ackerberg v. Johnson*, 892 F.2d 1328, 1336 (8th Cir. 1989))) (emphasis in original) (some internal quotations omitted).

[47] The SEC also highlights a number of actions that Epling does or has done for Hemp to show that he has control over the company regardless of his breakfast-conversation admissions. ECF No. 76 at 8–11. But Epling disputes each and every one of the SEC's arguments. ECF No. 89 at 26–29. This factual analysis is the province of a jury.

underwriters under Section 4(a)(1). As a result, the Epling Defendants were required to register their sales of Hemp stock, and in failing to do so, violated Section 5 of the Securities Act."[48]

But there's a problem with the SEC's argument. As I explained in Section B, *supra*, falling outside the Rule 144 safe harbor does not automatically make someone an underwriter. An individual who fails to satisfy Rule 144 may still not be an underwriter after a fact-intensive analysis—an analysis that is inappropriate at the summary-judgment stage. Plus, Epling vigorously denies the veracity of the statements that he made to his ex-business partners.[49] The SEC argues that Epling's testimony that he was lying during that breakfast is self-serving and insufficient to create a genuine issue of material fact.[50] But Epling was not under oath during that breakfast meeting, and he was under oath when he testified that he lied to his ex-business partners. If anything, Epling's sworn testimony puts his credibility at issue, and issues of credibility are for a jury to decide. I therefore find that genuine issues of material fact preclude me from granting summary judgment in favor of the SEC on its third cause of action.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that the Hemp Defendants' motion for judgment on the pleadings **[ECF No. 66] is DENIED**, and the SEC's motion for partial summary judgment against the Epling Defendants **[ECF No. 76] is DENIED**.

Dated: March 8, 2018

_____
U.S. District Judge Jennifer A. Dorsey

---

[48] ECF No. 76 at 22–23.

[49] ECF No. 89 at 19–20. Epling also argues that the conversation was illegally recorded and is therefore inadmissible and should be disregarded in deciding this motion. I do not decide any evidentiary issues in this order. If Epling wants to challenge the admissibility of the recording itself and the statements made during the conversation, he should do so in a timely motion in limine.

[50] ECF No. 99 at 3.